JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW YORK STATE TEACHERS' RETIREMENT SYSTEMS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FREMONT GENERAL CORPORATION, et al.,<br><br>Defendants. | Case No. 2:07-cv-5756-JHN-FFMx<br><br>ORDER GRANTING MOTION TO DISMISS THE THIRD AMENDED CONSOLIDATED CLASS ACTION SECURITIES COMPLAINT |

On February 1, 2010, this Court held a hearing on Defendant Fremont General Corporation et. al.'s ("Fremont" of "Defendants") Motion to Dismiss the Third Amended Complaint ("TAC") (docket no. 153). The Court has considered the Motion, Opposition, Reply, and oral arguments by counsel, as well as the prior rulings by the Court on the First and Second Amended Complaints. For the reasons set forth below, the Court GRANTS the Motion to Dismiss and DISMISSES the action WITH PREJUDICE.

///

///

## I. INTRODUCTION

The facts and legal proceedings in this action have been addressed in great detail by the late Judge Florence-Marie Cooper in her October 28, 2008 Order (docket no. 103), *N.Y. State Teachers' Retirement Sys. v. Fremont Gen. Corp.*, No. 2:07-cv-05756-FMC-FFMx, 2008 WL 4812021 (C.D. Cal. Oct. 28, 2008) ("*Fremont I*") dismissing the First Amended Complaint ("FAC"), and her September 25, 2009 Order (docket no. 123), *N.Y. State Teachers' Retirement Sys. v. Fremont Gen. Corp.*, No. 2:07-cv-05756-FMC-FFMx, 2009 WL 3112574 (C.D. Cal. Sept. 25, 2009) ("*Fremont II*") dismissing the Second Amended Complaint ("SAC").

Plaintiff has filed a TAC that sets forth virtually no new facts, disregards Judge Cooper's order not to include certain allegations, and constitutes the "puzzle pleading" that made the FAC and the SAC so difficult to decipher. This Court agrees with the reasoning and analysis of Judge Cooper's prior orders. As such, it is unnecessary to reiterate them for purposes of addressing the present Motion. Instead, this Order focuses on the fact that the TAC still fails to allege the causes of action with sufficient specificity and fails to correct the deficiencies described in *Fremont II*.

## II. THE PROBLEMS IDENTIFIED IN *FREMONT II* REMAIN

*CW 43*

Other than shifting statements in the SAC from one part of the document to another, Lead Plaintiff comes forward with almost no new facts. Lead Plaintiff places great import on the addition of a new confidential witness, CW 43:

> CW 43 was the executive vice president in charge of commercial real estate and sat on the board of FIL at relevant times during the Class Period. CW 43 reported directly to Defendant Walker and regularly reported and answered to Defendants Bailey

2

1    and Rampino. According to CW 43, Fremont's residual interest
2    valuations were based on assumptions related to "traditional"
3    mortgages, rather than subprime mortgages. Fremont continued to
4    rely on assumptions based on traditional mortgages even as
5    subprime loan performance data developed, which caused Fremont's
6    auditors to be "uncomfortable."  According to CW 43, Defendants
7    Nicolas and Walker were "well aware" of how the residuals were
8    being valued, and discussions over residual interest valuations were
9    "ongoing," internally and with Fremont's auditors and regulators,
10    from late 2006 through early 2007.  In particular, CW 43 reports that
11    there were "substantial discussions" about the residual interest
12    valuations at the end of the first quarter 2007, when Fremont was
13    having issues with its auditor "signing-off" on the Company's
14    financial statements.

15 (TAC App. A ¶ 66.)  "[A] complaint relying on statements from confidential
16 witnesses must pass two hurdles to satisfy the PSLRA pleading requirements.
17 First, the confidential witnesses whose statements are introduced to establish
18 scienter must be described with sufficient particularity to establish their reliability
19 and personal knowledge.  Second, those statements which are reported by
20 confidential witnesses with sufficient reliability and personal knowledge must
21 themselves be indicative of scienter."  *Zucco Partners, LLC v. Digimarc Corp.*,
22 552 F.3d 981, 995 (9th Cir. 2009) (citations omitted).
23     Defendants point out that CW 43 is identified as someone who worked in
24 commercial real estate, "a discrete business unit within Fremont that had nothing
25 to do with residential real estate loans or the accounting for those loans[,]" and
26 contend that she would not have personal knowledge. (Motion to Dismiss at 13).
27 The TAC does not describe how CW 43 acquired information about residual
28 interest accounting or, alternatively, detail how her knowledge is connected to her

3

1   position in the company.  Lead Plaintiff argues that CW 43 is described with
2   sufficient particularity to support the probability that a person in CW 43's
3   position – an FIL board member – would possess the information alleged and that
4   CW 43 reported directly to Walker and regularly reported and answered to
5   Rampino and Bailey.
6         The precise amount of detail that a party must reveal about a confidential
7   witness depends on the circumstances.  *In re Secure Computing Corporation*
8   *Securities Litigation*, 184 F. Supp. 2d 980, 988 (N.D. Cal. 2001); *see Zucco.*, 552
9   F.3d at 996 (finding no sufficient personal knowledge where witnesses were not
10  employed during the time period in question and had only secondhand
11  information about accounting practices at the corporation during that year).  In
12  the case of *In re Daou Systems, Inc.*, 411 F.3d 1006, 1016 (9th Cir. 2005), *cert.*
13  *denied*, 546 U.S. 1172, 126 S. Ct. 1335, 164 L. Ed. 2d 51 (2006), the following
14  descriptions were deemed sufficiently specific to meet the PLSRA requirements:
15      "Confidential Witness # 6 ('CW6') is a former Daou executive who
16      worked in the Finance Department. CW6 dealt with audit issues,
17      Security and Exchange ('SEC') reporting and budget matters. As
18      such, CW6 was familiar with Daou's process of collecting project
19      cost information. CW6 reported to defendant McGee." Similarly,
20      plaintiffs describe Confidential Witness # 9 as follows:
21      "Confidential Witness 9 ('CW9') is a former Daou Regional Vice
22      President of Sales. As Vice President of Sales, CW9 was responsible
23      for reporting weekly or bi-weekly sales information, such as sales
24      status/backlog and forecast/pipeline information, to Daou's Vice
25      Presidents and corporate officers."
26  It is noteworthy that each CW's position is linked to their relevant substantive
27  knowledge. *Cf. In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d
28  1056, 1068 (W.D. Wash. 2003) (holding that personal knowledge based on

4

1   discussions at company meetings or statements allegedly made by Defendants not
2   sufficiently pled - the complaint did not contain the dates of these meetings, lists
3   of attendees of meetings, or the substance of the matters discussed).  In this case,
4   while CW 43 is said to have worked at the company during the time period in
5   question, it is not clear that she would have direct knowledge of matters
6   pertaining to the residential real estate department.  Lead Plaintiff's description of
7   CW 43 does not link her position to any personal knowledge that would implicate
8   Defendants or indicate scienter.  As such, CW43 is not described with sufficient
9   particularity to establish reliability and personal knowledge.

10   Further, CW 43's vague statements are also not sufficiently probative as
11   required by *Zucco*'s second prong.  As pointed out by Defendants, CW 43 does
12   not define "'traditional' mortgages," nor what it means for residual interest
13   valuations to be "based on assumptions related to" such mortgages and fails to
14   specify exactly when the purported assumptions were being employed.  CW 43's
15   second purported statement – that auditors grew "'uncomfortable'" with
16   Fremont's valuation assumptions – is also vague as it does not state the nature of
17   this discomfort.  There is also no claim that Fremont management was not
18   responsive to these concerns.  Overall, these statements are not indicative of
19   scienter as required by *Zucco*.  *Zucco.*, 552 F.3d at 995.

20   Lead Plaintiff's inability to set forth facts that indicate scienter is further
21   evidenced by their telling decision to again include vague statements that Judge
22   Cooper had previously ordered them not to replead and continue the practice of
23   "puzzle pleading" that made their SAC difficult to decipher.

24   *Lead Plaintiff's Inclusion of Prohibited Statements*

25   The Court in *Fremont II* ordered Lead Plaintiff not to include certain
26   statements in the TAC.  Judge Cooper found that these statements were "so broad
27   and vague as to not be actionable . . ."  *Fremont II*, 2009 WL 3112574, at *29.
28   The prohibited statements include Defendant Bailey's statements in October 2005

5

1  about playing to "the upper end of the [subprime] spectrum" and statements in
2  Forms 10-Q that "FIL seeks to mitigate its exposure to credit risk through
3  underwriting standards that strive to ensure appropriate loan to collateral
4  valuations" and statements explaining, *inter alia*, that Fremont "seeks to
5  minimize credit exposure through loan underwriting that is focused upon
6  appropriate loan to collateral valuations and cash flow coverages[.]" *Fremont II*,
7  2009 WL 3112574, at *15.

Despite Judge Cooper's explicit order, all of these statements reappear in the TAC.[1]  Lead Plaintiff's willful disregard of the Court's prior order serves to highlight the weakness of its case, because the TAC's showing of scienter is appreciably weaker without these vague statements.

*Continued Puzzle Pleading*

In *Fremont II*, Lead Plaintiff was admonished for not presenting the relevant facts in a manner or format that permits the Court (or Defendants) to readily identify the allegations relevant to each individual defendant's scienter. *Fremont II*, 2009 WL 3112574 at *8.  This was problematic because "neither the SAC nor Plaintiff's Opposition to the instant Motion tie[d] *each* challenged statement to factual allegations regarding the specified Defendant's knowledge of (or reckless disregard for) the possibility of the challenged statement misleading investors." *Id*. (emphasis in original).  The Court was left to conclude that "Plaintiff has not made separate allegations regarding the knowledge attributable

---

[1]  Lead Plaintiff contends that these claims must be realleged in order to preserve appellate rights. (TAC ¶ 127 n.1), relying on *Forsyth v. Humana, Inc*., 114 F.3d 1467, 1474 (9th Cir. 1997).  *Forsyth* held that "a plaintiff waives all claims alleged in a dismissed complaint which are not realleged in an amended complaint." (Citations omitted).  However, the Ninth Circuit later clarified that the rule in *Forsythe* "deal[s] with *voluntary* waiver." *Sechrest v. Ignacio*, 549 F.3d 789, 804 (9th Cir. 2008) (Emphasis in original.)  There is no such waiver when the pleading party makes the omission in compliance with a court mandate. *Id*.

6

1  to each separate defendant in relationship to each challenged statement because
2  Plaintiff cannot do so." *Id*. The same problems exists with the TAC, which still
3  collectively makes allegations regarding "defendants" throughout. As discussed
4  below, this makes it difficult to discern against whom various causes of action are
5  asserted. Below are just a few of the problems with the TAC that make it no
6  easier to read than the SAC or FAC.
7        Lead Plaintiff again alleges that Fremont's statements regarding
8  underwriting and improvements were false when made. For example, Lead
9  Plaintiff includes allegations related to the Form 10-K filed for the year 2005 and
10 signed by Defendants McIntyre, Rampino, Bailey and Lamb describing
11 Fremont's underwriting in favorable terms. (TAC ¶ 151.) The TAC makes the
12 same bald assertions that this statement was misleading when made and that
13 Fremont, in fact, employed extremely "unsafe and unsound" underwriting
14 practices that were inconsistent with then-existing Interagency Guidance for
15 Subprime Lending. (TAC ¶ 152.) To find these Interagency Guidance
16 provisions, the reader must scour other portions of the complaint such as Section
17 IV(B)(1), which mentions, but does not fully describe, the contents of the
18 Interagency Guidance for Subprime Lending. (TAC ¶ 39 .) Section IV(B)(1)
19 contains the following general statement from the Massachusetts action, which is
20 presumably what Lead Plaintiff is referring to:
21     [I]nteragency Federal guidelines published January 31, 2001, jointly
22       by the Office of Comptroller of the Currency (OCC), the Board of
23       Governors of the Federal Reserve System, the FDIC, and the Office
24       of Thrift Supervision, stated "Loans to borrowers who do not
25       demonstrate capacity to repay the loan, as structured, from sources
26       other than the collateral pledged are generally  considered unsafe
27       and unsound."
28 (TAC ¶ 74.) Lead Plaintiff is engaging in the kind of "puzzle pleading" that

7

1  contributed to the dismissal of the SAC.

2  As another example, Lead Plaintiff alleges that each Defendant is
3  responsible for Fremont's written disclosures about underwriting. (TAC ¶¶
4  25-26.)  Lead Plaintiff again employs cross-pleading to show that these
5  statements are false.  The statements alleged to be materially false and misleading
6  are found in Section V, their materiality is in Section VI, and the facts necessary
7  to substantiate them are scattered throughout Section IV.

8  Lead Plaintiff's continued practice of "puzzle pleading" leads the Court to
9  conclude, as did Judge Cooper, that Plaintiff has not made separate allegations
10  pertaining to each defendant's knowledge because Plaintiff cannot do so.  Of
11  course, if puzzle pleading and the inclusion of prohibited statements were the
12  only deficiencies in the TAC, then the Court would allow this action to go
13  forward.  But the overarching problem with the Lead Plaintiff's allegations was,
14  and is, the lack of *factual* allegations that support the causes of action identified
15  in the TAC.  The Court cannot identify facts that – even when viewed in the
16  context of the entire document – are sufficiently indicative of falsity or scienter.
17  Accordingly, the TAC must be dismissed.

### III. CONCLUSION

If the Court dismisses a complaint, it must decide whether to grant leave to amend.  Denial of leave to amend is "improper unless it is clear that the complaint could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  In this case, the Court concludes that the TAC cannot be saved by any amendment, and for the

same reasons set forth in *Fremont I* and *Fremont II*, and discussed in this Order, the Court DISMISSES this action WITH PREJUDICE.

IT IS SO ORDERED.

Dated: March 29, 2010

_____
Jacqueline H. Nguyen, Judge
United States District Court